CHARLES SPOHR

*v.*

THE CITY OF CHICAGO, in trust for use of Schools.

*Opinion filed December 16, 1903—Rehearing denied February 3, 1904.*

1. EXPERT TESTIMONY—*when expert's opinion should be based on facts within his knowledge.* Opinions given by experts in regard to the value of property should be based upon facts within their actual knowledge which they are prepared to state.

2. SAME—*party is entitled to great latitude in cross-examining expert.* Great latitude is allowed in the cross-examination of an expert witness in order to enable the jury to see upon what reasons he bases his opinion, but the court may exercise a reasonable discretion in determining the range of proper cross-examination.

3. SAME—*what not undue restriction of cross-examination of an expert.* If an expert testifies, on cross-examination, as to a sale of property near that condemned, but states that all he knows about the price was what he learned from the index record in the recorder's office, further cross-examination as to such matter is unnecessary.

4. SAME—*questions merely requiring witness to repeat testimony may be disallowed.* Questions asked on cross-examination of an expert witness, the purpose of which is merely to require the witness to repeat what he has already stated, may be disallowed.

5. SAME—*expert witness may be asked as to his knowledge of sales in the vicinity.* An expert witness in a condemnation proceeding may be interrogated, on cross-examination, as to his knowledge of sales of property in the vicinity; but such knowledge is not necessarily the chief element in determining the weight to be given his testimony.

6. APPEALS AND ERRORS—*when court's restriction of cross-examination will be sustained.* Exclusion of questions by the trial court on cross-examination will be sustained, on appeal, if any tenable objection to the question exists, where the objections to the action of the court are merely general.

7. SAME—*when a condemnation verdict will stand, on appeal.* The amount of a condemnation verdict, based on conflicting oral testimony and a view of the premises by the jury, will not be disturbed, on appeal, unless the damages awarded are so grossly excessive or inadequate as to indicate the verdict was the result of passion, undue influence or improper means.

8. PRACTICE—*proper method of presenting question of undue restriction in cross-examination.* The proper method of presenting the question of undue restriction of cross-examination to a court of review is to call attention to the particular questions involved, and the rulings thereon, and to point out specifically wherein the court erred in excluding such questions.

9. EMINENT DOMAIN—*consideration named in deed is hearsay as to strangers.* The consideration named in the deed to property in the vicinity of other property condemned is mere hearsay, where the parties to the proceeding are strangers to the deed.

10. SAME—*instruction in condemnation is proper which excludes consideration of fanciful uses.* An instruction in a condemnation case which excludes from the consideration of the jury mere fanciful or speculative estimates of the value or use of the property given by any witness is proper, where the evidence is such as to justify it and the jury are fully instructed as to what constitutes a fair cash value in the market.

APPEAL from the Circuit Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

This is a proceeding to condemn certain property for the use of schools, brought by or under the auspices of the board of education in the city of Chicago. Several lots, owned by different persons, were sought to be condemned, and there were about eighteen respondents or defendants. The present appeal, however, was taken by the appellant, Spohr, alone. Appellant's property consisted of forty-four feet of ground on Sigel street, known as 128 and 130 Sigel street, and also a piece of ground twenty-two feet and four and five-eighths inches wide, fronting on Sigel street, and known as 132 Sigel street, upon which also was a building. The two pieces of property, to-wit, 128 and 130 Sigel street, and 132 Sigel street, adjoined each other. The cause was tried before a court and a jury. During the trial the jury viewed the premises. The jury awarded the appellant, as compensation for 128 and 130 Sigel street, including the land and the building thereon, the sum of $6750.00, and allowed, as compensation for 132 Sigel street, including the land and the building thereon, the sum of $5000.00. The land, on which the buildings numbered 128 and 130 Sigel street stood, appears to have been valued at $3500.00, and the building or buildings thereon at $3250.00, making $6750.00. The land, on which the building numbered 132 Sigel street stood, appears to have been valued at

$1772.00 and the building thereon at $3228.00, making altogether $5000.00. Judgment was rendered upon the verdict, returned by the jury, and the present appeal is prosecuted from such judgment.

ADLER & LEDERER, for appellant.

JAMES MAHER, and ANGUS R. SHANNON, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

*First*—The appellant, Charles Spohr, urges as a reason, why the judgment below should be reversed, that the court unduly restricted the cross-examination of a witness, introduced upon the trial below by the petitioner, or appellee, who testified in regard to the value of the property sought to be condemned. This witness, whose name was Mauritzon, testified, upon his direct examination, that he was a real estate agent, and had been engaged in that business in the city of Chicago for twenty years, and that the firm, of which he was a member, had, during that time, sold all kinds of property, vacant lots, residences, flats, and acre and business property. He also testified upon his direct examination, that he had appraised property for several elevated railroad companies, and for a steam railroad company, and for the city of Chicago in track elevation cases, and also for the board of education. He also testified upon the direct examination, that he was familiar with the property, involved in this litigation, known as 128, 130 and 132 Sigel street.

Upon his cross-examination, the witness, Mauritzon, stated that there had been a sale of certain property, known as 105 Sigel street on or about November 26, 1902, the petition in this case having been filed in March, 1903. His testimony was to the effect that all he knew about the sale of 105 Sigel street was what he learned from the record. He stated that he had gone to the recorder's

office, and examined the record index, and there learned the consideration named in the deed, executed upon the transfer of the property at 105 Sigel street. All the testimony of the witness in regard to 105 Sigel street, a piece of property not involved in the present litigation, was called out upon cross-examination. Counsel for appellant complain that the trial court did not allow them to pursue the cross-examination of the witness in regard to his knowledge of the sale of the property at 105 Sigel street. As we understand the evidence, he stated distinctly that he knew nothing about the sale, or the amount of the sale, except what he saw in the recorder's office upon an examination of the index record. He did not base his opinion of the value of the property, here in controversy, entirely upon what he learned from the record in regard to the sale of the property at 105 Sigel street, but he stated, upon his cross-examination by another lot owner, as follows: "I base my opinion on my general experience in the real estate business, taking into consideration the location of the property, the character of the surroundings, the improvements in the neighborhood, the transportation facilities and the rental of the property. I used to have charge of No. 105 Sigel street in 1885 for a number of years, and the properties we have had for sale on Wells street, Division, Orleans and Market and in that immediate vicinity."

We find no fault with counsel's contention in regard to the rule as to cross-examination in such cases. The weight of the testimony of expert witnesses in regard to the value of property depends largely upon the facts and reasons, which lie at the basis of their opinions. In other words, the opinions, given by experts, should be based upon facts within their actual knowledge, and which they are prepared to state. "While, in the examination in chief, the expert can only be questioned in a general way as to the reasons of his opinion, the cross-examiner is entitled in every instance to demand a free disclosure,

minutely and in detail, of all the facts and circumstances upon which the expert's opinion has been grounded." (8 Ency. of Pl. & Pr. p. 769; *Chicago and Northwestern Railway Co.* v. *Town of Cicero,* 154 Ill. 656.) Upon cross-examination, great latitude is allowed, so as to enable the jury to see upon what basis the witness has made his estimate of value, and what facts have induced him to form the opinion he has expressed. (3 Jones on Evidence, sec. 826; *Atchison, Topeka and Santa Fe Railroad Co.* v. *Blackshire,* 10 Kan. 487.) But a large discretion is necessarily left to the trial judge in determining the range proper to be allowed counsel in cross-examining witnesses. (*Chicago, Rock Island and Pacific Railway Co.* v. *Rathburn,* 190 Ill. 572; *City of Spring Valley* v. *Gavin,* 182 id. 232; *City of Chicago* v. *Lonergan,* 196 id. 518.) Of course, in such cases, the discretion, exercised by the court in regulating or limiting the cross-examination, should be a reasonable discretion, and cross-examination should not be excluded on subjects, embraced or included in the examination in chief, if such ruling is calculated to prejudice the cross-examining party. In other words, so far as the cross-examination of a witness relates either to facts in issue or facts relevant to the issue, it may be pursued as a matter of right. (3 Jones on Evidence,—1896—sec. 821.) But we are unable to see that, in the case at bar, there was any unnecessary or undue restriction by the trial court of the right of cross-examination. Counsel for appellant have not called our attention to each particular question, asked upon cross-examination, and pointed out specifically, wherein the court erred in refusing to permit the witness to answer such question. They have called our attention to some three or four pages of printed matter, taken from the abstract, and have stated that the court erred in its rulings as there set forth. They range their objections under heads which they call "groups" of objections. The proper course to pursue in such cases is to call attention to a particular question, and the rul-

ing thereon, and not to several pages of questions, and different rulings upon a number of questions. The objections were not specific in their nature, but were merely general objections. Where an objection is thus general in its character, and points out no specific ground upon which it is based, the action of the court in excluding the question will be sustained, if any tenable objection to the question in fact existed. (*North Chicago Street Railway Co.* v. *Cotton,* 140 Ill. 486.) The court sustained objections to many of the questions, put to the witness upon cross-examination, upon the ground that they were mere repetitions of questions already asked, and, if answered, would have called out testimony, which had already been given.

As to the sale or transfer, which was alleged to have been made of the property at 105 Sigel street, the witness was allowed in his testimony to state all that he knew about it. A further prosecution of the cross-examination in reference to that matter was improper and unnecessary. When the witness testified that his only knowledge of what the property had been sold for was the consideration named in the deed, as he saw it stated upon the index-record in the recorder's office, the matter was placed in the same light, as though the deed itself had been introduced in evidence for the purpose of showing what the property had been sold for. But where the only purpose of introducing a deed under such circumstances is to prove the price of the lots therein mentioned, as tending to establish the value of the lot in controversy, and this is to be done solely by the consideration expressed in the deed, such proof is of no value. It is true that the recital of the consideration in the deed may, as between the parties to it, be admissible evidence as tending to show the amount paid, but is not conclusive between them. As to strangers, however, to the deed, such recital is merely an *ex parte* statement of the parties to the deed. It is at most merely an admission of

the grantor and grantee in the deed, and, therefore, is hearsay when offered against a stranger to the deed. (*O'Hare* v. *Chicago, Madison and Northern Railroad Co.* 139 Ill. 151; *City of Chicago* v. *Lonergan*, 196 id. 518).

Counsel also complain that the cross-examination was unduly restricted in reference to other sales, spoken of by the witness, Mauritzon, besides that relating to 105 Sigel street, but, upon reading over the cross-examination of the witness, we find that he was permitted to answer questions of counsel in regard to sales made by him in 1890, in 1893, in 1894, and on the day before he testified. Counsel say that they had a right to test the witness' knowledge, and his fairness upon cross-examination, and for that purpose asked him what he knew about sales of lands in the same vicinity. (*Lentz* v. *Carnegie*, 145 Pa. St. 627.) This is true, but counsel was permitted by the court to call out the fact that the witness had made such sales; but the fact of such sales was stated by the witness to be only one of the grounds, upon which he based his opinion as to the value of the property. A witness may be allowed to state his knowledge of the actual sales in the vicinity of the property involved, but it is not always the chief element in determining the weight of the testimony of a witness when given. In *Chicago and Evanston Railroad Co.* v. *Blake*, 116 Ill. 163, we said (p. 167): "The uses and capabilities of a particular property; the prices at which like property in the neighborhood is held or offered; knowledge or observation of the growth and development of towns and cities; a general knowledge of trade and business, and of the commercial advantages or prospects of the place where the property is situated, are all matters more or less taken into account by the intelligent witness in forming his opinion as to the value of a particular piece of property."

The witness had also stated, upon his direct examination, that the property involved had a prospective value, in that it might be used at some future time for

manufacturing purposes. Complaint is made that the court unduly restricted the cross-examination of the witness upon this subject. But the court allowed counsel to call out from the witness the reasons why he was of the opinion, that it might be used for manufacturing purposes. The witness stated, in answer to questions by counsel, that, on the opposite side of the street from where the property involved was located, a large building had already been erected, which was used for manufacturing purposes. We are unable to say that appellant was deprived of any right by being too much restricted in his cross-examination of the witness, Mauritzon. Where facts have already been stated by a witness, questions, which merely have for their object the compelling of the witness to repeat what he has already said, may well be disallowed by the court. (*Chicago City Railway Co.* v. *Cooney,* 196 Ill. 466.)

Counsel for appellant attempt to show that the award of the jury must have been based upon the evidence of the witness, Mauritzon, whose cross-examination is the only cross-examination objected to. But this is mere matter of conjecture. Other testimony was introduced by the appellee, which placed the value of the property at about the same figure, at which Mauritzon placed it, and which was not objected to on the part of the appellant. Witnesses for appellee placed the value of the land at $75.00 and $80.00 per front foot, whereas the witnesses for the appellant placed the value of the land at $160.00 per front foot, and $175.00 per front foot. There was thus the usual conflict between the expert witnesses on both sides as to the value of the property. The jury viewed the premises, and we have held that what the jury have learned from their examination of the premises may be considered by them in passing upon the testimony of the witnesses; and that the damages, awarded by a jury in a condemnation proceeding, will not be disturbed where the evidence is conflicting, and the jury

have viewed the premises. "Where the jury make a personal inspection of the property sought to be condemned, the court is not justified in reversing the judgment based upon such verdict, unless the damages awarded are so grossly excessive as to show that the verdict was the result of passion, or of undue influence, or of improper means." (*Rock Island and Peoria Railway Co.* v. *Leisy Brewing Co.* 174 Ill. 547, and authorities there cited; *Lanquist* v. *City of Chicago*, 200 id. 69.) There is nothing in the case at bar to show that the verdict was the result of passion, or of undue influence, or of improper means.

*Second*—Complaint is made by the appellant that the court made a remark in the presence of the jury, which was prejudicial to the appellant. After the witness, Mauritzon, had stated that he had learned of the last sale of property on Sigel street from the record, the court remarked, "It was a newspaper report of the sale." This remark on the part of the court should not have been made, as there was nothing in the evidence to show that the witness had derived his information from a newspaper report of the sale. But after the court had made this remark, the witness was further questioned, and stated what has already been referred to, that he had gone to the recorder's office, and, although he had not examined the record of the deed, yet he had examined the index in the recorder's office, which showed the amount of the consideration in the deed. After this testimony by the witness, the jury could not have been led into the belief that the witness had learned about the sale from a newspaper. Indeed, the remark, made by the court, if it did any harm at all, was more calculated to injure appellee than appellant, because, as appellee's witness had stated that he had derived his information from the record, the remark of the court was calculated to cast discredit upon the witness, and make the impression that the witness had not correctly stated the source of his information. Although what the court said might well

have been left unsaid, we do not think that it had any such influence upon the jury, as to justify a reversal of the judgment.

*Third*—Counsel for the appellant also complain of an instruction, given by the court to the jury, wherein the court told the jury that, in ascertaining the just compensation to be paid by the petitioner to the owner of the land sought to be taken, they should disregard any mere fanciful or speculative estimate of its value or use made by any of the witnesses, if they believed from the evidence that any of the estimates made by the witnesses were fanciful or speculative. It is said that this instruction left it to the jury to determine a question of law, and assumed that there were mere fanciful or speculative estimates of value or use in the testimony. We do not think that it was submitting to the jury a question of law in telling them that they must not allow damages, based upon a mere fanciful or speculative estimate of value in view of other instructions given upon the subject of value. Nor can it be said that there were not sufficient facts, developed by the testimony, to justify a warning to the jury against the allowance of mere fanciful or speculative damages. This court has held that it is not error to give such an instruction as is here complained of. In *Chicago and Alton Railroad Co.* v. *City of Pontiac*, 169 Ill. 155, we said (p. 173): "Instructions 5 and 6 given for the plaintiff, told the jury that nothing should be allowed for imaginative or speculative damages, or such remote or inappreciable damages as the imagination may conjure up, and which may or may not arise at all in the future; and that 'just compensation' means compensation for real, not speculative damages, and that, unless actual damages are shown, only nominal damages can be awarded to the appellant for the extension of the street, as prayed in the petition. This instruction is in accordance with the holding of this court in *Chicago, Burlington and Quincy Railroad Co.* v. *City of Chicago*, 149 Ill.

457, and the cases therein cited." Other instructions, given to the jury in the case at bar, told them that the compensation to be paid to the owner for the parcels of land, proposed to be taken by the city, was the fair cash value in the market of said parcels of land. What constituted fair cash value in the market was sufficiently explained to the jury in other instructions. In telling them, that they must not base their award upon fanciful or speculative estimates of value, the court was merely enlarging its instruction to them, that they must look only to the fair cash value in the market.

We discover no error which would justify us in reversing this judgment. Accordingly, the judgment of the circuit court is affirmed.                    *Judgment affirmed.*