ELLA DROESE, Plaintiff-Appellee, *v.* ROBERT FLEMING *et al.*, Defendants-Appellants.

Second District    Nos. 80-1, 80-10 cons.

Opinion filed February 25, 1981.

Lloyd E. Dyer, Jr., of Wheaton, and Thomas P. McLaughlin and James W. Bruce, both of Thomas P. McLaughlin Law Offices, of Schaumburg, for appellants.

Robert E. Jones and Thomas W. Murphy, both of Greene, Murphy, Jones & Brisske, of Wheaton, for appellee.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

A jury found for the plaintiff Ella Droese on her complaint for personal injuries against the defendant Joseph J. Barrett, the driver of the car in which she was a passenger, and against the driver of the other car, Robert Fleming. The defendants appeal from the judgment in the amount of $28,000 entered on the jury verdict, each contending that the verdict against him should be reversed or a new trial ordered.

The collision occurred on June 11, 1976, at approximately 5:30 p.m. in the eastbound lanes of the I-90 expressway. Both vehicles were traveling eastbound near the entrance ramp from York Road. Barrett testified that the traffic was backed up in the two left eastbound lanes near divider strips but where the road was to expand into a four-lane highway. Barrett testified that he first noticed Fleming's car as he looked in his rear-view mirror. That was about a mile and a half or two miles from the point of the collision. At that time Barrett was driving at a speed of approximately 55 miles per hour in the far right lane of the highway, which at that point had two lanes going east. He estimated that Fleming's car was going 80 miles per hour when it passed him. Barrett testified that after Fleming passed he saw him switching from lane to lane, then go out of sight. He next saw the vehicle beginning to make a turn from the third lane of the four lane section near the approach to the York Road intersection. Barrett was driving in lane number one. He accelerated to a speed of about 45 miles per hour "or thereabouts." He said he was in the right lane for about 10 seconds when he saw the Fleming vehicle coming from either the third or fourth lane and crossing in front of him at close to a 90-degree angle. Barrett said he took his foot off the gas pedal, stepped on the brake and his car began to skid diagonally. At the time of the collision he estimated his speed as less than 45 or possibly 40 miles per hour. The left front

portion of the Barrett vehicle struck the right side of the rear fender and part of the back section of Fleming's car. Barrett's car came to rest partially in the righthand lane of I-90 and partially over the white divider strip at the York Road exit. Barrett stated that he did not make any attempt to move into the left lane that was free of traffic.

Plaintiff similarly testified that the Barrett vehicle in which she was riding was in the far right lane when the collision occurred. She said that the Fleming vehicle was "in lane two, and it made a very sudden, erratic turn to the right, right across in front of us." She also testified that Fleming did not activate his turn signal at any time. She didn't know the speed of either car at the time of the accident. She did not think Barrett moved the car to the right or to the left or attempted to turn the car from right or left. She recalled his screeching brakes.

Fleming testified that at approximately 600 to 700 yards before the impact he moved over to the right lane, and used his turn signal prior to changing lanes. He stated that he did not see Barrett's car at any time prior to the collision. He said that at the time of the collision he was traveling between 40 to 45 miles per hour. He denied that he was exceeding the speed limit at any prior time. After he was hit he pulled off the shoulder approximately 20 feet beyond the York Road exit. He was not intending to exit at York Road.

In addition to the personal injury suit filed by the plaintiff against both defendants, Barrett filed a suit for property damage against Fleming and Fleming filed a counterclaim for property damage. The property damage suit was consolidated with the personal injury suit for trial. In the property damage action the jury found against Barrett on his complaint and against Fleming on his counterclaim, as well as finding for the plaintiff against both defendants on the personal injury complaint.

Fleming's appeal has been perfunctorily argued. The principal issue concerns Barrett's argument that the jury by its verdict against Fleming showed that it did not believe Fleming's testimony that he had been in his own lane when he was struck from the rear by Barrett; and, from that premise, no evidence had been presented that he was negligent, since the plaintiff as well as Barrett testified that his car was proceeding under the speed limit when Fleming sharply turned across their lane.

■■■ The standards for review are clear. On a motion for a new trial the court will weigh the evidence and set aside the verdict and order a new trial if the verdict is contrary to the manifest weight of the evidence; a judgment *n.o.v.* is to be entered only if all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could stand. (See, *e.g., Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 309-10.) We conclude that there is a sufficient factual basis for the verdicts against both

defendants and that the trial court properly denied the motions for judgment *n.o.v.* or for a new trial.

Fleming admitted that he changed lanes, although he claimed it was approximately 600 to 700 yards before the collision. He did not see the Barrett vehicle prior to the impact. The jury could have concluded from the testimony that Fleming changed lanes at a time and manner when it was not reasonable to do so.

The jury could also have concluded that defendant Barrett was negligent in traveling too fast for conditions on his testimony that he was traveling 40-45 miles per hour with evidence that the two left lanes were backed up, and could further have concluded that he failed to keep a proper lookout.

■■ There is a duty to keep a safe lookout to avoid colliding with a vehicle ahead and to take into account the prospect of having to stop suddenly. (*Glenn v. Mosley* (1976), 39 Ill. App. 3d 172, 176.) The fact that the accident occurred in daylight on a dry pavement is some evidence that Barrett was driving too fast for the prevailing conditions. (*Glenn v. Mosley* (1976), 39 Ill. App. 3d 172, 176. See also *Harrison v. Pullens* (1967), 83 Ill. App. 2d 245, 249.) Fleming's testimony that he had been driving in his lane for some 600 to 700 yards is evidence bearing on Barrett's negligence. Barrett argues that Fleming's testimony is not credible and obviously was not believed by the jury. Fleming, however, could as well argue that since the jury found Barrett also guilty of negligence it obviously did not believe Barrett's version of the accident.

Barrett has conceded on appeal that he was not entitled to a directed verdict at the close of the evidence. His argument in effect is that the jury in considering the two versions of the accident abdicated its responsibility by finding both defendants guilty instead of choosing to believe one version or the other.[1] We are not persuaded, however, that under the circumstances the evidence presents two mutually exclusive theories. It is not unusual for drivers of vehicles involved in a collision to give markedly different accounts of the facts of the occurrence and yet to be both properly found liable to the plaintiff. (See, *e.g., Naslund v. Watts* (1967), 80 Ill. App. 2d 464, 470; *Curtis v. Gedman* (1949), 338 Ill. App. 463, 478; *Penzin v. Stratton* (1974), 26 Ill. App. 3d 475.) In *Penzin,* one defendant argued that there was no evidence of his negligence in the record, since no one testified that he was speeding. The court agreed that no direct evidence of speeding was presented, but determined that the jury could infer excessive speed from circumstantial evidence. *Penzin,* at 479-81.

---

[1] It should be noted that Barrett did not object to instructions and verdict forms which allowed the jury to find against both defendants and that the position which he takes on appeal is somewhat inconsistent with his failure to address the issue in the conference on instructions.

Also, in *Cribbs v. Daily* (1966), 67 Ill. App. 2d 441, each party claimed that the other had crossed the center line. Although the court noted "a certain unreality in saying that two cars approaching each other can both cross a line drawn between them in the same instant," it found it was possible that the jury could reach that conclusion and that the court on review should have "no trouble" in saying that the combined negligence of the two parties proximately caused plaintiff's injuries. *Cribbs*, at 446-47.

We conclude that the jury was free to reconcile sharply conflicting versions by disbelieving aspects of both drivers' accounts of the accident. Thus, it could have decided that Fleming did abruptly change lanes but did so sufficiently in front of Barrett to give him time to avoid the accident if he had been keeping a proper lookout or not going too fast for conditions. In that posture, both defendants acted negligently; Fleming by changing lanes in an unsafe manner and Barrett in failing to avoid the accident by either going too fast or by not keeping a careful watch.

The judgments against both defendants are affirmed.

Affirmed.

LINDBERG and REINHARD, JJ., concur.